STATE of Wisconsin, Plaintiff-Respondent,

v.

David E. VERHAGEN, Defendant-Appellant.†

Court of Appeals

*No. 94–2823–CR. Submitted on briefs September 19, 1995.—Decided November 15, 1995.*

(Also reported in 542 N.W.2d 189.)

†Petition to review denied.

177

178

180

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Randall E. Paulson*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Gregory Posner-Weber*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J. This appeal concerns the "reverse waiver" proceedings contemplated by § 970.032, STATS. That statute authorizes the adult criminal court, which otherwise has exclusive original jurisdiction pursuant to § 48.183, STATS., over a child alleged to have committed a battery under special cir-

cumstances, to transfer jurisdiction to the juvenile court.

We have previously granted David E. Verhagen's petition for leave to appeal the trial court's nonfinal order retaining original adult court jurisdiction in this criminal prosecution which alleges that Verhagen, a juvenile, committed a battery to an officer while in a secured correctional facility. On appeal, Verhagen contends that: (1) the statutory scheme violates his equal protection rights, (2) the adult court improperly assigned a portion of the burden of proof to him in the "reverse waiver" proceeding, and (3) the adult court erred by retaining adult court jurisdiction.

Based on existing precedent, we conclude that the statutory scheme does not violate Verhagen's right to equal protection of the law. We further conclude that a juvenile defendant has the burden of proof in a reverse waiver proceeding. Finally, we conclude that the adult court properly exercised its discretion when it decided to retain jurisdiction over Verhagen. We therefore affirm the nonfinal order.

## BACKGROUND

The State charged Verhagen with the February 3, 1994 battery of a youth counselor at the Ethan Allen School for Boys where Verhagen was committed as a juvenile offender. The complaint alleged that Verhagen's conduct violated § 940.20(1), STATS., which is punishable by the penalties delineated in § 939.635, STATS.

On February 4, 1994, Verhagen made an initial appearance in adult court before the Honorable Kathryn W. Foster pursuant to § 48.183, STATS.[1] This

---

[1] Section 48.183, STATS., provides as follows:

statute presumptively grants the adult criminal court "exclusive original jurisdiction" over a child alleged to have violated § 940.20(1), STATS., unless the adult court transfers jurisdiction to the juvenile court in a "reverse waiver" proceeding[2] pursuant to § 970.032, STATS. Verhagen challenged the adult court's jurisdiction on constitutional and statutory grounds. In due course, Judge Foster denied these challenges.

Thereafter, Verhagen filed a timely request for substitution of judge against Judge Foster, and the matter was assigned to the Honorable Marianne E. Becker, who presided over the preliminary hearing and the concurrent reverse waiver hearing pursuant to § 970.032, STATS. Following a probable cause determination, Judge Becker addressed the reverse waiver question. The judge allocated the burden of proof to both parties, requiring the State to make a prima facie showing for retention of jurisdiction and requiring Verhagen to demonstrate that a transfer to the juvenile court was warranted.

At the conclusion of the reverse waiver hearing, Judge Becker ruled that the State had carried its bur-

---

**Jurisdiction over children alleged to have committed assault or battery in a secured correctional facility.** Notwithstanding ss. 48.12(1) and 48.18, courts of criminal jurisdiction have exclusive original jurisdiction over a child who is alleged to have violated s. 940.20(1) . . . while placed in a secured correctional facility. Notwithstanding subchs. IV to VI, a child who is alleged to have violated s. 940.20(1) . . . while placed in a secured correctional facility is subject to the procedures specified in chs. 967 to 979 and the criminal penalties provided for those crimes, unless a court of criminal jurisdiction transfers jurisdiction under s. 970.032 to a court assigned to exercise jurisdiction under this chapter.

[2] *See State v. Martin,* 191 Wis. 2d 647, 651, 530 N.W.2d 420, 422 (Ct. App. 1995).

den but that Verhagen had not carried his. The court therefore retained jurisdiction over Verhagen.

Verhagen petitioned this court for leave to appeal the rulings of both Judge Foster and Judge Becker. Verhagen challenged Judge Foster's ruling that the statutory scheme did not violate his constitutional equal protection rights, and he challenged Judge Becker's allocation of the burden of proof. We accepted Verhagen's petition because the burden of proof question presented an issue of first impression. Verhagen's constitutional issues are governed by *State v. Martin*, 191 Wis. 2d 647, 650, 530 N.W.2d 420, 421 (Ct. App. 1995), in which the court of appeals rejected the arguments made by Verhagen here. We do not discuss them further in this opinion. We will recite additional facts as we address the appellate issues.

## DISCUSSION

### BURDEN OF PROOF

█

On appeal, both parties dispute Judge Becker's "shared allocation" of the burden of proof on the reverse waiver issue. The State contends that the burden was fully Verhagen's; Verhagen contends that the burden was fully the State's. The dispute requires that we construe § 970.032, STATS. The interpretation of a statute presents a question of law which we review independently. *State v. Skamfer*, 176 Wis. 2d 304, 307, 500 N.W.2d 369, 370 (Ct. App. 1993).

█

Section 48.183, STATS., vests the adult criminal court with "exclusive original jurisdiction over a child who is alleged to have violated s. 940.20(1)." Section 970.032(2), STATS., provides that if at the preliminary

hearing the adult court finds probable cause to believe that a juvenile has violated § 940.20, STATS., the court must then determine whether to retain jurisdiction or to transfer jurisdiction to children's court. Section 970.032(2) further mandates that the court "shall retain jurisdiction" unless the court finds that all of the following considerations are satisfied:

> (a) That, if convicted, the child could not receive adequate treatment in the criminal justice system.
> (b) That transferring jurisdiction to the court assigned to exercise jurisdiction under ch. 48 would not depreciate the seriousness of the offense.
> (c) That retaining jurisdiction is not necessary to deter the child or other children from committing violations of s. 940.20(1) or 946.43 or other similar offenses while placed in a secured correctional facility, as defined in s. 48.02(15m).

This statute does not specify which party carries the burden of proof as to reverse waiver. Nor, if the burden is shared, does the statute specify which party bears the burden as to a particular question. Given this silence, we conclude that reasonable minds could differ on this question. Thus, the statute is ambiguous.

The State cites cases from several jurisdictions which have held that the burden rests with a juvenile to prove that transfer from adult court to the juvenile court is warranted. Although these cases provide some guidance, we observe that the particular statutory language under scrutiny in those cases more clearly signals that the burden rests with the juvenile because the statutes require the juvenile to bring a motion or to seek application for a transfer. *See, e.g., State v. Anderson,* 385 A.2d 738, 739 n.2 (Del. Super. Ct. 1978) (the court may transfer the case to family court upon appli-

cation of the defendant); *Carter v. State,* 382 So. 2d 871, 872 (Fla. Dist. Ct. App. 1980) (juvenile defendant treated as an adult unless he or she files a motion requesting transfer to juvenile division); *State v. Woodward,* 737 P.2d 569, 569, *and modified,* 745 P.2d 1180 (Okla. Crim. App. 1987) (an accused person shall file a motion for certification as a child).

Unlike these statutes, § 970.032, STATS., does not expressly require the juvenile to bring a motion requesting the transfer to juvenile court. Nonetheless, we conclude that the juvenile properly bears the burden of proof on a reverse waiver question.

■

We begin with an examination of the law regarding the assignment of a burden of proof. Absent express legislative direction on the question, we employ a five-factor analysis in determining which party has the burden of proof. *See State v. McFarren,* 62 Wis. 2d 492, 499-503, 215 N.W.2d 459, 463-66 (1974); *State v. Hanson,* 98 Wis. 2d 80, 85-90, 295 N.W.2d 209, 213-15 (Ct. App. 1980), *aff'd,* 100 Wis. 2d 549, 302 N.W.2d 452 (1981). The five factors are: (1) special policy considerations, (2) the judicial estimate of probabilities, (3) the natural tendency to place the burdens on the party desiring change, (4) the fairness factors, and (5) convenience. *Hanson,* 98 Wis. 2d at 85-86, 295 N.W.2d at 213. We will consider each of these factors in turn.

### 1. Policy Considerations

Section 48.183, STATS., grants the adult court exclusive original jurisdiction over a juvenile who has committed an assault or battery while an inmate in a secured correctional facility. The adult court retains this jurisdiction unless all of the criteria set out in § 970.032(2), STATS., are satisfied. The statute

187

presumes that the child will be kept in the adult system unless the court determines that the child cannot receive adequate treatment, that transfer would not depreciate the seriousness of the offense and that retaining jurisdiction is not necessary to deter the child or other children from committing further batteries. *Id.*

By this enactment, the legislature has clearly recognized that assaults and batteries committed by juveniles while inmates of correctional facilities are matters of serious public concern. The legislative policy presumptively favors adult court jurisdiction over juvenile court jurisdiction. These policy considerations favor placing the burden for undoing this presumption on the juvenile defendant.

### 2. *Judicial Estimate of Probabilities*

Judicial estimate of probabilities recognizes that the "risk of failure of proof may be placed upon the party who contends that the more unusual has occurred." *Hanson,* 98 Wis. 2d at 88, 295 N.W.2d at 214 (emphasis added and quoted source omitted). Here, the usual situation is that the criminal court "shall retain jurisdiction" over a juvenile who violates § 940.20(1), STATS. *See* § 970.032, STATS. The unusual situation under the statutory scheme is one in which the court orders a transfer of jurisdiction to the juvenile court. Thus, this consideration favors placing the burden regarding the statutory factors on the juvenile.

### 3. Natural Tendency to Place Burden on Party Seeking Change

■

Akin to the foregoing, the next factor recognizes the law's natural tendency to place the burden on the party seeking change in the present state of affairs. *See Hanson*, 98 Wis. 2d at 90, 295 N.W.2d at 215. As we have already demonstrated, the statutory scheme presumptively vests the adult criminal court with exclusive original jurisdiction. A transfer to juvenile court changes that presumption. Therefore, this consideration also favors placing the burden on the juvenile.

### 4. Fairness Factor

■

The fairness factor has two components: "proof of exceptions" and "proof of negatives." *Id.* at 89, 295 N.W.2d at 214. Proof of exceptions is the rule that the one who relies on an exception to a general rule or statute has the burden of proving that the case falls within the exception. *Id.* As we have noted, § 48.183, STATS., vests the adult criminal court with exclusive original jurisdiction. In addition, § 970.032(2), STATS., provides that the adult court "shall retain jurisdiction *unless* the court finds all of the following [factors supporting transfer]." (Emphasis added.) A transfer to the juvenile court would constitute an "exception" or a "negative" to that state of affairs. This consideration also supports placing the burden on the juvenile.

189

### 5. Convenience

The convenience factor addresses which party most readily has the facts at its command to provide the court with information about whether the adult or the juvenile court should exercise jurisdiction. *See id.; Hanson*, 98 Wis. 2d at 87-88, 295 N.W.2d at 214. We acknowledge that the State might, in a given case, have relevant information about the juvenile and the State's ability to provide adequate treatment in the justice system. However, it seems obvious that the juvenile would have the best command and knowledge of information about himself or herself relative to the reverse waiver question. We conclude that this consideration also favors placing the burden on the juvenile.

We therefore hold that the juvenile bears the burden of proof to demonstrate that the statutory factors under § 970.032(2), STATS., support transferring jurisdiction to the juvenile court. Thus, Judge Becker's assignment of a portion of this burden to the State was partial error. However, since the error inured to the benefit of Verhagen, no reversible error occurred.

### REVERSE WAIVER

Verhagen next challenges Judge Becker's determination that the evidence as applied to the statutory factors set out in § 970.032(2)(a)-(c), STATS., did not support a transfer of jurisdiction to the juvenile court. We conclude that the court's findings are supported by the evidence and represent a proper application of the statutory factors.

It is well established that a juvenile court's decision to waive jurisdiction to adult court is a discretionary decision for the juvenile court. *See State v. C.W.,* 142 Wis. 2d 763, 766-67, 419 N.W.2d 327, 328-29 (Ct. App. 1987). We see no reason why a decision to retain or transfer jurisdiction in a reverse waiver situation should be any different. We therefore will review Judge Becker's reverse waiver ruling as a discretionary determination.

■

A discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and considered together for the purpose of achieving a reasoned and reasonable determination. *Breuer v. Town of Addison,* 194 Wis. 2d 617, 626, 534 N.W.2d 634, 638-39 (Ct. App. 1995). We will not reverse a trial court's discretionary act if the record reflects that discretion was in fact exercised and there was a reasonable basis for the court's determination. *See C.W.,* 142 Wis. 2d at 766, 419 N.W.2d at 328. When reviewing a trial court's exercise of discretion, we will look for reasons to sustain the decision. *See J.A.L. v. State,* 162 Wis. 2d 940, 960-61, 471 N.W.2d 493, 501 (1991).

Verhagen's victim, James Woods, testified about the facts and circumstances surrounding the February 3, 1994 incident. On that day, Verhagen was a kitchen worker who had special privileges in the minimum-security unit and concurrent restrictions on his contact with the other residents. Verhagen had been warned earlier in the day to end his horseplay with other residents, but was discovered after dinner engaged in the same conduct with other residents in a bathroom. Woods ordered Verhagen out of the bathroom and to

his room. Verhagen became angry and refused. Eventually, another staff member persuaded Verhagen to go to his room.

Later, as Woods was making his rounds up and down the hallway where Verhagen's room was located, Verhagen repeatedly told Woods he wanted to talk to him. Eventually, Woods went to the door but remained in the hallway to talk to Verhagen because regulations required two staff members to go into a resident's room.

As the two talked, Verhagen got angrier and louder, so Woods attempted to close the door and continue his duties. Verhagen put his foot in front of the door and yanked the door to prevent Woods from closing it. As Verhagen tugged at the door, Woods' keys fell to the floor and into Verhagen's room. As Woods looked for his keys, Verhagen used his fist to hit Woods on the head, causing Woods' glasses to fly down the hallway. Verhagen told Woods he was an "asshole" as he hit Woods on the head with his fist. Verhagen swung at Woods again, but Woods blocked the punch. Verhagen then ripped Woods' shirt over his head and threw it on the floor. Woods tried to restrain Verhagen, but he continued to swing at Woods and began kicking him.

When Woods finally restrained Verhagen in a corner by holding his arms, Verhagen used his elbow to hit Woods on the top of the head between six and eight times. Another staff member arrived to help Woods keep Verhagen against the wall. Verhagen then heaved his knee upward to hit Woods under the chin and rammed his head into the right corner of Woods' eye, knocking Woods' teeth together and giving him a raised lump on the side of his eye. When a third staff member arrived, they were able to use a compression hold to get Verhagen's hands behind his back.

Verhagen was kept face down on his bed in handcuffs until the supervisors arrived, placed him in leg irons and took him to the maximum-security unit.

Woods was treated at the local hospital for his swollen face and black eye. He also received treatment from a psychiatrist who recommended that he take time off from work. Although Woods did take six days off, he still had a black eye when he returned to the Ethan Allen School.

Judge Becker specifically considered the factors in subsec. (2)(a)-(c) of § 970.032, STATS., when deciding to retain adult court jurisdiction. The court described Verhagen's conduct as "a vicious major attack" and concluded that transferring jurisdiction to the juvenile court would depreciate the seriousness of the offense. *See* subsec. (2)(b).

The trial court also concluded that Verhagen needed to spend time in jail to be deterred from committing future offenses and that retention in the criminal justice system would give him an idea of how much worse the consequences would be if he did not reform. The court further determined that retaining jurisdiction was necessary to deter other children in the Ethan Allen School because others were looking to see who "gets away with what" and whether "they can get away with pushing people around," especially the security officers. *See* § 970.032(2)(c), STATS.

The trial court acknowledged that Verhagen's treatment in the adult system might not be as adequate as that in the juvenile system, but the court concluded, on balance, that the other statutory factors in favor of retaining adult court jurisdiction overrode this consideration. It is thus obvious that the court engaged in a rational mental process based on the facts

of record and balanced the relevant legal criteria. The court exercised its discretion and provided a reasonable basis for its decision. The law of discretion requires no more. *See C.W.,* 142 Wis. 2d at 766-67, 419 N.W.2d at 328-29.

We affirm Judge Becker's ruling retaining adult court jurisdiction.[3] We remand for further future proceedings.

*By the Court.*—Order affirmed and cause remanded.

---

[3]Verhagen raises two additional issues, both of which he acknowledges are not ripe for appellate review. First, Verhagen contends that we should mandate that the limitations on discovery in criminal cases set out in § 971.23, STATS., should not apply in cases involving juvenile defendants. Verhagen seeks this ruling despite his concession that in this case he "has no specific discovery-related issue to appeal." We decline to address this issue.

Second, Verhagen asks this court to decree that juvenile defendants charged in adult court are not governed by the bail provisions for adult defendants pending a reverse waiver hearing. Instead, Verhagen contends that the trial court must admit a juvenile defendant to a signature bond so that the juvenile might resume his or her confinement in the facility for juvenile offenders. Verhagen acknowledges, however, that if we uphold the trial court's reverse waiver ruling, the issue is moot. Since we have upheld that court's ruling, we do not address this issue.